IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS PENSION FUND, and HOWARD McDOUGALL, Trustee, <br><br>  Plaintiffs, <br><br> v. <br><br> DUBUQUE STORAGE & TRANSFER CO., an Iowa corporation, <br><br>  Defendant. | FILED <br> MAY 12, 2008        YM <br> 08CV2730 <br> JUDGE PALLMEYER <br> MAGISTRATE JUDGE SCHENKIER <br><br> Case No. <br><br> Judge <br><br> Magistrate Judge |

## COMPLAINT

Plaintiffs, Central States, Southeast and Southwest Areas Pension Fund and Howard McDougall, one of its present trustees, for a cause of action against Defendant, allege as follows:

### JURISDICTION AND VENUE

1.  This is an action for collection of withdrawal liability, interest, and penalties incurred by an employer as a result of a withdrawal from a multiemployer pension plan.

2.  This action arises under the Employee Retirement Income Security Act of 1974 ("ERISA") *as amended* by the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA"), 29 U.S.C. § 1001 *et seq.* (1982). This Court has jurisdiction over this action under sections 502(e), 502(f), and 4301(c) of ERISA, 29 U.S.C. §§ 1132(e), 1132(f) and 1451(c).

3.  Venue lies in this Court under sections 502(e)(2) and 4301(d) of ERISA, 29 U.S.C. §§ 1132(e)(2) and 1451(d), in that the Central States, Southeast and Southwest Areas Pension Fund is administered at its principal place of business in Rosemont, Illinois.

## PARTIES

4. Plaintiff Central States, Southeast and Southwest Areas Pension Fund ("Pension Fund") is a multiemployer pension plan within the meaning of sections 3(37) and 4001(a)(3) of ERISA, 29 U.S.C. §§ 1002(37) and 1301(a)(3).

5. Plaintiff Howard McDougall is a trustee of the Pension Fund and he and his fellow trustees are the plan sponsor of the Pension Fund within the meaning of section 4001(a)(10) of ERISA, 29 U.S.C. § 1301(a)(10). The Trustees administer the Pension Fund at 9377 West Higgins Road, Rosemont, Illinois 60018.

6. Pursuant to sections 502(a)(3) and 4301(a)(1) of ERISA, 29 U.S.C. §§ 1132(a)(3) and 1451(a)(1), the Trustees, by and through their designated trustee Howard McDougall, are authorized to bring this action on behalf of the Pension Fund, its participants and beneficiaries for the purpose of collecting withdrawal liability.

7. Defendant Dubuque Storage and Transfer Company ("Dubuque Storage") is or was a corporation organized under the laws of the State of Iowa.

## FACTUAL BACKGROUND

*A.   The H&W Stock Sale.*

8. H&W Motor Express Company ("H&W") is or was a corporation organized under the laws of the State of Iowa.

9. From at least September 25, 2000 to January 18, 2001, certain members of the Haas family and the Wissel family (collectively referred to as the "H&W Shareholders") directly or indirectly owned at least 80% of the total combined voting power of all classes

of outstanding stock entitled to vote or at least 80% of the total value of outstanding shares of all classes of stock of H&W.

10. From at least September 25, 2000 to January 18, 2001, the H&W Shareholders directly or indirectly owned at least 80% of the total combined voting power of all classes of outstanding stock entitled to vote or at least 80% of the total value of outstanding shares of all classes of stock of Dubuque Storage.

11. The H&W Shareholders (except Urban R. Haas and Patricia M. Haas) entered into a Memorandum of Understanding effective January 4, 2001 ("Memorandum of Understanding No. 1") with Roger D. Waldner regarding the sale of H&W.

12. Urban R. Haas and Patricia M. Haas entered into a Memorandum of Understanding dated January 9, 2001 ("Memorandum of Understanding No. 2") with Roger D. Waldner regarding the sale of H&W.

13. On January 18, 2001, there were 27,500 shares of H&W outstanding. On that date, 25,228 shares of H&W were transferred to Roger D. Waldner pursuant to Memorandum of Understanding Nos. 1 and 2 (collectively referred to as the "H&W Stock Sale").

14. For at least several years prior to the H&W Stock Sale, H&W had been operating at a loss. In the year 2000 alone, H&W had an operating loss in excess of a million dollars.

15. Prior to and at the time of the H&W Stock Sale, the H&W Shareholders were aware that H&W and all other trades or businesses under common control with H&W within the meaning of section 4001(b)(1) of ERISA, 29 U.S.C. § 1301(b)(1), and the

regulations promulgated thereunder, would be liable to the Pension Fund for millions in withdrawal liability if H&W permanently ceased to have an obligation to contribute to the Pension Fund or permanently ceased all covered operations.

16. Prior to the H&W Stock Sale, the H&W Shareholders discussed selling H&W in a manner that they and other trades or businesses under common control with H&W would not be liable for withdrawal liability.

B. *H&W's Withdrawal From The Pension Fund.*

17. During all relevant times, H&W was bound by collective bargaining agreements with certain Teamsters locals, under which H&W was required to make contributions to the Pension Fund on behalf of certain of its employees.

18. The Pension Fund determined that on or about June 15, 2002, H&W permanently ceased to have an obligation to contribute to the Pension Fund or permanently ceased all covered operations, thereby effecting a "complete withdrawal," as defined in section 4203 of ERISA, 29 U.S.C. §1383 (the "Withdrawal").

19. As a result of the Withdrawal, H&W incurred withdrawal liability to the Pension Fund in the principal amount of $6,578,843.86 as determined under section 4201(b) of ERISA, 29 U.S.C. §1381(b).

20. On June 12, 2002, H&W filed for Chapter 11 bankruptcy (later converted to a Chapter 7) in the United States Bankruptcy Court for the Northern District of Iowa. The bankruptcy is pending and is styled *In Re: H&W Motor Express Company*, Case No. 02-02017 (Bankr. N.D. Iowa).

21. On or about September 30, 2002, the Pension Fund filed a proof of claim in the amount of $6,578,843.86 in the H&W bankruptcy for the H&W withdrawal liability.

22. On February 18, 2003, the Pension Fund filed an amended proof of claim in the amount of $6,597,343.81 for the H&W withdrawal liability (the "Withdrawal Liability").

## COUNT I
## DEFAULTED WITHDRAWAL LIABILITY

23. Plaintiffs hereby reallege and incorporate each and every allegation made in paragraphs 1 through 22 of this Complaint as though fully set forth herein.

24. If the H&W Stock Sale effectively transferred the H&W stock to Roger D. Waldner, a principal purpose of the H&W Stock Sale was for Dubuque Storage to evade or avoid the Withdrawal Liability to the Pension Fund.

25. Pursuant to ERISA § 4212(c), 29 U.S.C. § 1392(c), the H&W Stock Sale may be disregarded in determining and collecting the Withdrawal Liability.

26. Therefore, on or about June 15, 2002 (the date of H&W's complete withdrawal from the Pension Fund), Dubuque Storage and H&W (the "H&W Controlled Group") were trades or business under common control and therefore constituted a single employer within the meaning of section 4001(b)(1) of ERISA, 29 U.S.C. § 1301(b)(1), and the regulations promulgated thereunder.

27. The H&W Controlled Group is the "employer" for purposes of the determination and assessment of withdrawal liability under Title IV of ERISA.

28. On or about September 30, 2002 and February 18, 2003, the H&W Controlled Group, through the filing of the proof of claim and amended proof of claim in the H&W bankruptcy case, received a notice and demand for payment of withdrawal liability issued

by the Pension Fund in accordance with sections 4202(2) and 4219(b)(1) of ERISA, 29 U.S.C. §§1382(2) and 1399(b)(1).

29. The H&W Controlled Group has failed to make any of the withdrawal liability payments to the Pension Fund.

30. No member of the H&W Controlled Group requested that the Pension Fund review the Withdrawal and Withdrawal Liability pursuant to ERISA § 4219(b)(2)(A), 29 U.S.C. § 1399(b)(2)(A).

31. No member of the H&W Controlled Group initiated arbitration regarding the Withdrawal and Withdrawal Liability pursuant to ERISA § 4221(a)(1), 29 U.S.C. § 1401(a)(1).

32. Under ERISA § 4221(b)(1), 29 U.S.C. § 1401(b)(1), the H&W Controlled Group has waived all challenges to the Withdrawal and Withdrawal Liability by failing to request review or initiate arbitration in a timely fashion.

33. The H&W Controlled Group failed to make any of the withdrawal liability payments to the Pension Fund and fell into default within the meaning of section 4219(c)(5) of ERISA, 29 U.S.C. § 1399(c)(5).

34. Each of the members of the H&W Controlled Group, including Dubuque Storage, are jointly and severally liable to the Pension Fund for the Withdrawal Liability.

**WHEREFORE**, Plaintiffs request the following relief:

(a) A judgment against Defendant, and on behalf of Plaintiffs, pursuant to sections 502(g)(2) and 4301(b) of ERISA, 29 U.S.C. §1132(g)(2) and 1451(b), for --

(1) $6,597,343.81 in withdrawal liability;

  (2) interest computed and charged at an annualized interest rate equal to two percent (2%) plus the prime interest rate established by Chase Manhattan Bank (New York, New York) for the fifteenth day of the month for which interest is charged;

  (3) an amount equal to the greater of interest on the withdrawal liability or liquidated damages of 20% of the unpaid withdrawal liability; and

  (4) attorney's fees and costs.

 (b) Post-judgment interest computed and charged on the entire judgment balance at an annualized interest rate equal to two percent (2%) plus the prime interest rate established by Chase Manhattan Bank (New York, New York) for the fifteenth (15th) day of the month for which interest is charged and shall be compounded annually; and

 (c) For such further or different relief as this Court may deem proper and just.

## COUNT II
## INTERIM WITHDRAWAL LIABILITY PAYMENTS (IN THE ALTERNATIVE)

35. This count is plead in the alternative to Count I.

36. Plaintiffs hereby reallege and incorporate each and every allegation made in paragraphs 1-22 and 26-27 of this Complaint as though fully set forth herein.

37. On or about March 31, 2008, the H&W Controlled Group, through Dubuque Storage, received a notice and demand for payment of withdrawal liability issued by the Pension Fund in accordance with sections 4202(2) and 4219(b)(1) of ERISA, 29 U.S.C. §§1382(2) and 1399(b)(1). The notice demanded immediate full payment of the Withdrawal Liability pursuant to section 4219(c)(5)(B) of ERISA, 29 U.S.C. § 1399(c)(5)(B), and Appendix

E, § 5(e)(2) of the Pension Fund's Pension Plan. The amount demanded was $9,548,276.37, the balance owed at that time on the Withdrawal Liability.

38.  Pursuant to ERISA §§ 4219(c)(2) and 4221(d), 29 U.S.C. §§ 1399(c)(2) and 1401(d), withdrawal liability payments must be made in accordance with the schedule set forth by the plan sponsor notwithstanding any request for review or demand for arbitration.

39.  The H&W Controlled Group failed to make the interim withdrawal liability payment to the Pension Fund.

40.  Each of the members of the H&W Controlled Group, including Dubuque Storage, are jointly and severally liable to the Pension Fund for the interim withdrawal liability payment.

**WHEREFORE**, Plaintiffs request the following relief:

(a)  A judgment against Defendant, and on behalf of Plaintiffs, pursuant to sections 502(g)(2) and 4301(b) of ERISA, 29 U.S.C. §1132(g)(2) and 1451(b), for –

    (1)  the past due interim withdrawal liability payment in the amount of $6,597,343.81;

    (2)  interest computed and charged at an annualized interest rate equal to two percent (2%) plus the prime interest rate established by Chase Manhattan Bank (New York, New York) for the fifteenth day of the month for which interest is charged;

    (3)  an amount equal to the greater of interest on the withdrawal liability or liquidated damages of 20% of the unpaid withdrawal liability; and

   (4) attorney's fees and costs.

 (b) Post-judgment interest computed and charged at an annualized interest rate equal to two percent (2%) plus the prime interest rate established by Chase Manhattan Bank (New York, New York) for the fifteenth (15th) day of the month for which interest is charged and shall be compounded annually; and

 (c) For such further or different relief as this Court may deem proper and just.

        Respectfully submitted,

        /s/ Charles H. Lee
        Charles H. Lee (ARDC #6244633)
        Attorney for Central States

        CENTRAL STATES FUNDS
        Law Department
        9377 W. Higgins Road, 10th Floor
        Rosemont, IL 60018

May 12, 2008       (847) 518-9800, Ext. 3468