IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS PENSION FUND, and HOWARD McDOUGALL, Trustee, <br><br> Plaintiffs, <br><br> v. <br><br> DUBUQUE STORAGE & TRANSFER CO., an Iowa corporation, URBAN R. HAAS, PATRICIA M. HAAS, U. ANDREW HAAS, CHRISTOPHER J. HAAS, AIMEE M. HAAS, CATHERINE A. HAAS, MARIAN H. KRAUS, ELIZABETH S. TOBIN, PATRICK TOBIN, JOHN C. KRAUS, W. WALLACE KRAUS, JANET M. CARR, MARY PIEKENBROCK, WILLIAM PIEKENBROCK, and CAROL LAMMERS, all individuals, <br><br> Defendants. | Case No. 08 C 2730 <br><br> Judge Rebecca R. Pallmeyer <br><br> Magistrate Judge Schenkier |

**FIRST AMENDED COMPLAINT**

Plaintiffs, Central States, Southeast and Southwest Areas Pension Fund and Howard McDougall, one of its present trustees, for a cause of action against Defendants, allege as follows:

**JURISDICTION AND VENUE**

1.      This is an action for collection of withdrawal liability, interest, and penalties incurred by an employer as a result of a withdrawal from a multiemployer pension plan.

2.      This action arises under the Employee Retirement Income Security Act of 1974 ("ERISA") *as amended* by the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA"), 29 U.S.C. § 1001 *et seq.* (1982). This Court has jurisdiction over this action

under sections 502(e), 502(f), and 4301(c) of ERISA, 29 U.S.C. §§ 1132(e), 1132(f) and 1451(c) and 28 U.S.C. §§ 1331 and 1367.

3. Venue lies in this Court under sections 502(e)(2) and 4301(d) of ERISA, 29 U.S.C. §§ 1132(e)(2) and 1451(d), in that the Central States, Southeast and Southwest Areas Pension Fund is administered at its principal place of business in Rosemont, Illinois.

## PARTIES

4. Plaintiff Central States, Southeast and Southwest Areas Pension Fund ("Pension Fund") is a multiemployer pension plan within the meaning of sections 3(37) and 4001(a)(3) of ERISA, 29 U.S.C. §§ 1002(37) and 1301(a)(3).

5. Plaintiff Howard McDougall is a trustee of the Pension Fund and he and his fellow trustees are the plan sponsor of the Pension Fund within the meaning of section 4001(a)(10) of ERISA, 29 U.S.C. § 1301(a)(10). The Trustees administer the Pension Fund at 9377 West Higgins Road, Rosemont, Illinois.

6. Pursuant to sections 502(a)(3) and 4301(a)(1) of ERISA, 29 U.S.C. §§ 1132(a)(3) and 1451(a)(1), the Trustees, by and through their designated trustee Howard McDougall, are authorized to bring this action on behalf of the Pension Fund, its participants and beneficiaries for the purpose of collecting withdrawal liability.

7. Defendant Dubuque Storage and Transfer Company ("Dubuque Storage") is or was a corporation organized under the laws of the State of Iowa.

8. Defendant Urban R. Haas is an individual who resides in the State of Iowa.

9. Defendant Patricia M. Haas is an individual who resides in the State of Iowa.

10. Defendant U. Andrew Haas is an individual who resides in the State of Minnesota.

11. Defendant Christopher J. Haas is an individual who resides in the State of Minnesota.

12. Defendant Aimee M. Haas is an individual who resides in the State of Iowa.

13. Defendant Catherine A. Haas is an individual who resides in the State of Iowa.

14. Defendant Marian H. Kraus is an individual who resides in the State of Iowa.

15. Defendant Elizabeth S. Tobin is an individual who resides in the State of Iowa.

16. Defendant Patrick Tobin is an individual who resides in the State of Iowa.

17. Defendant John C. Kraus is an individual who resides in the State of Iowa.

18. Defendant W. Wallace Kraus is an individual who resides in the State of Iowa.

19. Defendant Janet M. Carr is an individual who resides in the State of Iowa.

20. Defendant Mary Piekenbrock is an individual who resides in the State of Iowa.

21. Defendant William Piekenbrock is an individual who resides in the State of Iowa.

22. Defendant Carol Lammers is an individual who resides in the State of Iowa.

**FACTUAL BACKGROUND**

A.  *The H&W Stock Sale.*

23.  H&W Motor Express Company ("H&W") is or was a corporation organized under the laws of the State of Iowa.

24.  From at least September 25, 2000 to January 18, 2001, certain members of the Haas family and the Wissel family (collectively referred to as the "H&W Shareholders") directly or indirectly owned at least 80% of the total combined voting power of all classes of outstanding stock entitled to vote or at least 80% of the total value of outstanding shares of all classes of stock of H&W.

25.  From at least September 25, 2000 to January 18, 2001, the H&W Shareholders directly or indirectly owned at least 80% of the total combined voting power of all classes of outstanding stock entitled to vote or at least 80% of the total value of outstanding shares of all classes of stock of Dubuque Storage.

26.  The H&W Shareholders (except Urban R. Haas and Patricia M. Haas) entered into a Memorandum of Understanding effective January 4, 2001 ("Memorandum of Understanding No. 1") with Roger D. Waldner regarding the sale of H&W.

27.  Urban R. Haas and Patricia M. Haas entered into a Memorandum of Understanding dated January 9, 2001 ("Memorandum of Understanding No. 2") with Roger D. Waldner regarding the sale of H&W.

28.  On January 18, 2001, there were 27,500 shares of H&W outstanding. On that date, 25,228 shares of H&W were transferred to Roger D. Waldner pursuant to

Memorandum of Understanding Nos. 1 and 2 (collectively referred to as the "H&W Stock Sale").

29. For at least several years prior to the H&W Stock Sale, H&W had been operating at a loss. In the year 2000 alone, H&W had an operating loss in excess of a million dollars.

30. Prior to and at the time of the H&W Stock Sale, the H&W Shareholders were aware that H&W and all other trades or businesses under common control with H&W within the meaning of section 4001(b)(1) of ERISA, 29 U.S.C. § 1301(b)(1), and the regulations promulgated thereunder, would be liable to the Pension Fund for millions in withdrawal liability if H&W permanently ceased to have an obligation to contribute to the Pension Fund or permanently ceased all covered operations.

31. Prior to the H&W Stock Sale, the H&W Shareholders discussed selling H&W in a manner that they and other trades or businesses under common control with H&W would not be liable for withdrawal liability.

B.   *H&W's Withdrawal From The Pension Fund.*

32. During all relevant times, H&W was bound by collective bargaining agreements with certain Teamsters locals, under which H&W was required to make contributions to the Pension Fund on behalf of certain of its employees.

33. The Pension Fund determined that on or about June 15, 2002, H&W permanently ceased to have an obligation to contribute to the Pension Fund or permanently ceased all covered operations, thereby effecting a "complete withdrawal," as defined in section 4203 of ERISA, 29 U.S.C. §1383 (the "Withdrawal").

34. As a result of the Withdrawal, H&W incurred withdrawal liability to the Pension Fund in the principal amount of $6,578,843.86 as determined under section 4201(b) of ERISA, 29 U.S.C. §1381(b).

35. On June 12, 2002, H&W filed for Chapter 11 bankruptcy (later converted to a Chapter 7) in the United States Bankruptcy Court for the Northern District of Iowa. The bankruptcy is pending and is styled *In Re: H&W Motor Express Company*, Case No. 02-02017 (Bankr. N.D. Iowa).

36. On or about September 30, 2002, the Pension Fund filed a proof of claim in the amount of $6,578,843.86 in the H&W bankruptcy for the H&W withdrawal liability.

37. On February 18, 2003, the Pension Fund filed an amended proof of claim in the amount of $6,597,343.81 for the H&W withdrawal liability (the "Withdrawal Liability").

C.  ***The Dubuque Storage Shareholders and the Conveyances.***

38. Defendants, Urban R. Haas, Patricia M. Haas, U. Andrew Haas, Christopher J. Haas, Aimee M. Haas, Catherine A. Haas, Marian H. Kraus, Elizabeth S. Tobin, Patrick Tobin, John C. Kraus, W. Wallace Kraus, Janet M. Carr, Mary Piekenbrock, William Piekenbrock, and Carol Lammers, were shareholders of Dubuque Storage (collectively the "Dubuque Storage Shareholders").

39. Dubuque Storage has been liquidated and dissolved and its remaining assets were distributed to the Dubuque Storage Shareholders.

40. The Dubuque Storage Shareholders caused unknown amounts to be transferred to them personally (hereinafter referred to as the "Conveyances"). Dubuque Storage did not receive reasonably equivalent value for the Conveyances.

## COUNT I
## DEFAULTED WITHDRAWAL LIABILITY

41. Plaintiffs hereby reallege and incorporate each and every allegation made in paragraphs 1 through 40 of this First Amended Complaint as though fully set forth herein.

42. Count I is brought against Dubuque Storage.

43. If the H&W Stock Sale effectively transferred the H&W stock to Roger D. Waldner, a principal purpose of the H&W Stock Sale was for Dubuque Storage to evade or avoid the Withdrawal Liability to the Pension Fund.

44. Pursuant to section 4212(c) of ERISA, 29 U.S.C. § 1392(c), the H&W Stock Sale may be disregarded in determining and collecting the Withdrawal Liability.

45. Therefore, on or about June 15, 2002 (the date of H&W's complete withdrawal from the Pension Fund), Dubuque Storage and H&W (the "H&W Controlled Group") were trades or business under common control and therefore constituted a single employer within the meaning of section 4001(b)(1) of ERISA, 29 U.S.C. § 1301(b)(1), and the regulations promulgated thereunder.

46. The H&W Controlled Group is the "employer" for purposes of the determination and assessment of withdrawal liability under Title IV of ERISA.

47. On or about September 30, 2002 and February 18, 2003, the H&W Controlled Group, through the filing of the proof of claim and amended proof of claim in the H&W bankruptcy case, received a notice and demand for payment of withdrawal liability issued by the Pension Fund in accordance with sections 4202(2) and 4219(b)(1) of ERISA, 29 U.S.C. §§1382(2) and 1399(b)(1).

48. The H&W Controlled Group has failed to make any of the withdrawal liability payments to the Pension Fund.

49. No member of the H&W Controlled Group requested that the Pension Fund review the Withdrawal and Withdrawal Liability pursuant to section 4219(b)(2)(A) of ERISA, 29 U.S.C. § 1399(b)(2)(A).

50. No member of the H&W Controlled Group initiated arbitration regarding the Withdrawal and Withdrawal Liability pursuant to section 4221(a)(1) of ERISA, 29 U.S.C. § 1401(a)(1).

51. Under section 4221(b)(1) of ERISA, 29 U.S.C. § 1401(b)(1), the H&W Controlled Group has waived all challenges to the Withdrawal and Withdrawal Liability by failing to request review or initiate arbitration in a timely fashion.

52. The H&W Controlled Group failed to make any of the withdrawal liability payments to the Pension Fund and fell into default within the meaning of section 4219(c)(5) of ERISA, 29 U.S.C. § 1399(c)(5).

53. Each of the members of the H&W Controlled Group, including Dubuque Storage, are jointly and severally liable to the Pension Fund for the Withdrawal Liability.

**WHEREFORE**, Plaintiffs request the following relief:

(a) A judgment against Defendant Dubuque Storage, and on behalf of Plaintiffs, pursuant to sections 502(g)(2) and 4301(b) of ERISA, 29 U.S.C. §1132(g)(2) and 1451(b), for --

    (1) $6,597,343.81 in withdrawal liability;

    (2) interest computed and charged at an annualized interest rate equal to two percent (2%) plus the prime interest rate established by Chase

        Manhattan Bank (New York, New York) for the fifteenth day of the month for which interest is charged;

    (3) an amount equal to the greater of interest on the withdrawal liability or liquidated damages of 20% of the unpaid withdrawal liability; and

    (4) attorney's fees and costs.

  (b) Post-judgment interest computed and charged on the entire judgment balance at an annualized interest rate equal to two percent (2%) plus the prime interest rate established by Chase Manhattan Bank (New York, New York) for the fifteenth (15th) day of the month for which interest is charged and shall be compounded annually; and

  (c) For such further or different relief as this Court may deem proper and just.

## COUNT II
## INTERIM WITHDRAWAL LIABILITY PAYMENT (IN THE ALTERNATIVE)

  54. This count is plead in the alternative to Count I.

  55. Plaintiffs hereby reallege and incorporate each and every allegation made in paragraphs 1-40 and 43-46 of this First Amended Complaint as though fully set forth herein.

  56. On or about March 31, 2008, the H&W Controlled Group, through Dubuque Storage, received a notice and demand for payment of withdrawal liability issued by the Pension Fund in accordance with sections 4202(2) and 4219(b)(1) of ERISA, 29 U.S.C. §§1382(2) and 1399(b)(1). The notice demanded immediate full payment of the Withdrawal Liability pursuant to section 4219(c)(5)(B) of ERISA, 29 U.S.C. § 1399(c)(5)(B), and Appendix E, § 5(e)(2) of the Pension Fund's Pension Plan. The amount demanded was $9,548,276.37, the balance owed at that time on the Withdrawal Liability.

57.     Pursuant to sections 4219(c)(2) and 4221(d) of ERISA, 29 U.S.C. §§ 1399(c)(2) and 1401(d), withdrawal liability payments must be made in accordance with the schedule set forth by the plan sponsor notwithstanding any request for review or demand for arbitration.

58.     The H&W Controlled Group failed to make the interim withdrawal liability payment to the Pension Fund.

59.     Each of the members of the H&W Controlled Group, including Dubuque Storage, are jointly and severally liable to the Pension Fund for the interim withdrawal liability payment.

**WHEREFORE**, Plaintiffs request the following relief:

(a)    A judgment against Defendant Dubuque Storage, and on behalf of Plaintiffs, pursuant to sections 502(g)(2) and 4301(b) of ERISA, 29 U.S.C. §1132(g)(2) and 1451(b), for–

> (1)    the past due interim withdrawal liability payment in the amount of $6,597,343.81;
>
> (2)    interest computed and charged at an annualized interest rate equal to two percent (2%) plus the prime interest rate established by Chase Manhattan Bank (New York, New York) for the fifteenth day of the month for which interest is charged;
>
> (3)    an amount equal to the greater of interest on the withdrawal liability or liquidated damages of 20% of the unpaid withdrawal liability; and
>
> (4)    attorney's fees and costs.

(b) Post-judgment interest computed and charged at an annualized interest rate equal to two percent (2%) plus the prime interest rate established by Chase Manhattan Bank (New York, New York) for the fifteenth (15th) day of the month for which interest is charged and shall be compounded annually; and

(c) For such further or different relief as this Court may deem proper and just.

## COUNT III

60. Plaintiffs hereby reallege and incorporate each and every allegation made in paragraphs 1 through 40 of this First Amended Complaint as though fully set forth herein.

61. Count III is brought against the Dubuque Storage Shareholders.

62. Section 4212(c) of ERISA, 29 U.S.C. § 1392(c), prohibits a transaction if a principal purpose of such transaction is to evade or avoid withdrawal liability.

63. Upon information and belief, a principal purpose of the Conveyances to the Dubuque Storage Shareholders was to evade or avoid the payment of the Withdrawal Liability to the Pension Fund.

64. Under section 4212(c) of ERISA, 29 U.S.C. §1392(c), the Conveyances may be voided and the Dubuque Storage Shareholders may be held liable to the Pension Fund for the amounts of the Conveyances.

**WHEREFORE,** Plaintiffs request the following relief:

(a) That this Court void and disregard the Conveyances from Dubuque Storage to the Dubuque Storage Shareholders and enter judgment against the Dubuque Storage Shareholders in the amount of the Conveyances, pre-judgment interest as allowed by law, plus such other and future amounts to be proven in this case;

(b)   Attorney's fees and costs; and

(c)   For such further or different relief as this Court may deem proper and just.

## COUNT IV

65.   Plaintiffs hereby reallege and incorporate each and every allegation made in paragraphs 1 through 40 of this First Amended Complaint as though fully set forth herein.

66.   Count IV is brought against the Dubuque Storage Shareholders.

67.   The Conveyances were made with the intent to hinder, delay or defraud creditors of Dubuque Storage or alternatively were made without Dubuque Storage receiving a reasonably equivalent value in exchange for the transfers.

68.   The Dubuque Storage Shareholders were insiders of Dubuque Storage at the time they received the Conveyances.

69.   At the time of or as a result of the Conveyances to the Dubuque Storage Shareholders, Dubuque Storage was left insolvent and lacked sufficient assets to pays its creditors, one of which is the Pension Fund.

70.   The Conveyances constitute fraud on Dubuque Storage's creditors.

71.   To the extent, as alleged above, the Dubuque Storage Shareholders received a transfer of Dubuque Storage's assets (i.e., the Conveyances) in preference to the Withdrawal Liability owed by Dubuque Storage to the Pension Fund, the Dubuque Storage Shareholders became liable for all amounts owed by Dubuque Storage to the Pension Fund, and the Dubuque Storage Shareholders became an employer subject to withdrawal liability, or the alter ego of such an employer.

72. Sections 502(a)(3)(B) and 4301(a) of ERISA, 29 U.S.C. §1132(a)(3)(B) and §1451(a), authorize this Court to impose a constructive trust on the assets of Dubuque Storage distributed to the Dubuque Storage Shareholders for the benefit of Plaintiffs.

**WHEREFORE**, the Plaintiffs request the following relief:

(a) That this Court enter judgment against the Dubuque Storage Shareholders in the amount of the Conveyances, pre-judgment interest as allowed by law, plus such other and future amounts to be proven in this case;

(b) That this Court impose a constructive trust on the amounts of the Conveyances distributed to the Dubuque Storage Shareholders from Dubuque Storage;

(c) Attorney's fees and costs; and

(d) For such further or different relief as this Court may deem proper and just.

## COUNT V

73. Plaintiffs hereby reallege and incorporate each and every allegation made in paragraphs 1 through 40 of this First Amended Complaint as though fully set forth herein.

74. Count V is brought against the Dubuque Storage Shareholders.

75. The Conveyances were made with the intent to hinder, delay or defraud creditors of Dubuque Storage or alternatively were made without Dubuque Storage receiving reasonably equivalent value in exchange for the Conveyances.

76. The Dubuque Storage Shareholders were insiders of Dubuque Storage at the time they received the Conveyances.

77. At the time of or as a result of the Conveyances to the Dubuque Storage Shareholders, Dubuque Storage was left insolvent and lacked sufficient assets to pays its creditors, one of which is the Pension Fund.

78. The Conveyances were fraudulent tranfers as to the Pension Fund who was a creditor of Dubuque Storage either before or after the transfers were made.

79. To the extent, as alleged above, the Dubuque Storage Shareholders received a transfer of Dubuque Storage's assets in preference to the Withdrawal Liability owed by Dubuque Storage to the Pension Fund, the Dubuque Storage Shareholders became liable for all amounts owed by Dubuque Storage to the Pension Fund.

**WHEREFORE**, the Plaintiffs request the following relief:

(a) That this Court enter judgment against the Dubuque Storage Shareholders in the amount of the Conveyances, pre-judgment interest as allowed by law, plus such other and future amounts to be proven in this case;

(b) Attorney's fees and costs; and

(c) For such further or different relief as this Court may deem proper and just.

## COUNT VI

80. Plaintiffs hereby reallege and incorporate each and every allegation made in paragraphs 1 through 40 of this First Amended Complaint as though fully set forth herein.

81. Count VI is brought against the Dubuque Storage Shareholders.

82. The Conveyances were made without Dubuque Storage receiving reasonably equivalent value in exchange for the Conveyances.

83. As a result of the Conveyances to the Dubuque Storage Shareholders, Dubuque Storage was left insolvent and lacked sufficient assets to pays its creditors, one of which is the Pension Fund.

84. The Conveyances constitute improper shareholder distributions in that the Dubuque Storage Shareholders preferred themselves in favor of outside creditors, such as the Pension Fund.

85. To the extent the Dubuque Storage Shareholders received transfers of assets/monies from Dubuque Storage which resulted in Dubuque Storage not being able to pay the Withdrawal Liability to the Pension Fund, the Dubuque Storage Shareholders became liable to the Pension Fund for the amount of the Conveyances.

**WHEREFORE**, the Plaintiffs request the following relief:

(a) That this Court enter judgment against the Dubuque Storage Shareholders in the amount of the Conveyances, pre-judgment interest as allowed by law, plus such other and future amounts to be proven in this case;

(b) Attorney's fees and costs; and

(c) For such further or different relief as this Court may deem proper and just.

Respectfully submitted,

/s/ Charles H. Lee
Charles H. Lee (ARDC #6244633)
Attorney for Central States

CENTRAL STATES FUNDS
Law Department
9377 W. Higgins Road, 10th Floor
Rosemont, IL 60018
June 11, 2008    (847) 518-9800, Ext. 3468